**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE LOZA, KIMBERLY HALL, AND NICOLE RIVERA, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE HERSHEY COMPANY,<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; AND UNJUST ENRICHMENT<br><br>JURY TRIAL DEMANDED |

## INTRODUCTION

1.      Plaintiffs Nicole Loza, Kimberly Hall and Nicole Rivera, by and through their counsel, bring this class action against Defendant The Hershey Company ("Defendant") to seek redress for its unlawful and deceptive practices in the labeling and marketing of Lily's chocolate products which make prominent front label claims that the products are "Stevia Sweetened."

2.      Consumers desire foods sweetened with Stevia because it is a natural, plant-based sugar alternative with known health benefits, such as an anti-hypertensive, anti-obesity, anti-diabetic, antioxidant, anti-cancer, anti-inflammatory, and antimicrobial effects and improvement of kidney function. Consumers understand the representation "Stevia Sweetened" to mean that the Lily's chocolate products are entirely, or at the very least predominantly, sweetened with Stevia. Consumers seeking Stevia sweetened products do so for a specific reason – they want

solely, if not predominantly, Stevia because it is a natural plant-based sweetener, has understood health benefits, and is preferred over alternative sweeteners that present health risks.

3.     Defendant's representations are misleading because despite the prominent front label claim representations, the Products are predominately and primarily sweetened with ***erythritol***. Erythritol is a highly processed sugar alcohol which is not a natural sweetener like Stevia. Recent studies have shown that erythritol is disruptive to gut health and is linked to increased risk of heart attack and stroke. Consumers reasonably understand (and believe) that products marketed as "Stevia Sweetened" obtain their sweet taste from Stevia, not some other sweetener, let alone an artificial, harmful sweetener. Defendant's labeling of the Lily's chocolates as "Stevia Sweetened" is designed to – and does – deceive, mislead, and defraud consumers like Plaintiffs.

4.     Defendant's unlawful and misleading "Stevia Sweetened" claims caused Plaintiffs and members of the class to, at a minimum, pay a price premium for the Lily's products.

## **PARTIES**

5.     Plaintiff Nicole Loza is, and at all times alleged in this Class Action Complaint was, an individual and a resident of South San Francisco, California. Plaintiff Loza makes her permanent home in California and intends to remain in California.

6.     Plaintiff Kimberly Hall is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Santa Rosa, California. Plaintiff Hall makes her permanent home in California and intends to remain in California.

7.     Plaintiff Nicole Rivera is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Bernadino, California. Plaintiff Rivera makes her permanent home in California and intends to remain in California.

8.     Defendant The Hershey Company is a Delaware corporation doing business in the United States and the state of California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) at least one Class member and Defendant are citizens of different states.

10.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the State of California, including within this District.

12.      In accordance with California Civil Code Section 1780(d), Plaintiffs concurrently file herewith a declaration establishing that (i) Plaintiff Loza purchased Lily's chocolate products, including the Lily's Peppermint Flavor White Chocolate Style Baking Chips, on one or more occasions during the last four years while in California and (ii) Plaintiff Hall purchased Lily's chocolate products, including the Lily's Creamy Milk Chocolate and Lily's Salted Caramel Milk Chocolate bar, on one or more occasions during the last four years while in California. (Plaintiffs' declarations are attached hereto as Exhibits A and B.)

13.      Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

14.      Defendant manufactures, distributes, markets, advertises, and sells food products under the brand name "Lily's." The Lily's products have packaging that predominately, uniformly, and consistently states on the principal display panel of the product labels that they are "Stevia Sweetened." Plaintiffs have attached as Exhibit C a non-exhaustive list of the Lily's

1   products that currently or during the Class Period have made "Stevia Sweetened" claims on the

2   front of the product packages and are sweetened with erythritol. The products listed in Exhibit

3   C, and any other Lily's products, including the Lily's chocolate bars, baking chips, baking bars,

4   chocolate popcorn, dark chocolate almonds, chocolate caramels, chocolate peanuts, chocolate

5   peanut butter cups, and tasting squares, that claim they are sweetened using Stevia but are

6   sweetened with erythritol will hereinafter be referred to as the "Products."

7        15.    The representation that the Products are "Stevia Sweetened" was uniformly

8   communicated to Plaintiffs and every other person who purchased any of the Products in

9   California. The same or substantially similar product label has appeared on each Product during

10  the entirety of the Class Period in the general form of the following example:



11

12

13

14

15

16

17

18

19

20

21

22

23

24       16.    As shown in the ingredient list on the back of the Products, which have appeared

25  consistently throughout the Class Period in the general form of the following example (from the

26  Salted Almond Milk Chocolate Style Chocolate Bars), the Products contain far more erythritol

27

28

than Stevia. *See* 21 C.F.R. § 101.4. Stevia is, in fact, listed as the second to last or last ingredient in each of the Products' ingredient lists as seen in the example below.[1]



17.     Stevia is derived from the leaves of the Stevia rebaudiana (Bertoni) plant, an herbal shrub native to South America.[2] Stevia is known to be high in antioxidants.[3] Multiple

---

[1] The ingredient list on the example shown reads: UNSWEETENED CHOCOLATE, COCOA BUTTER, ERYTHRITOL, CHICORY ROOT FIBER, DEXTRIN, WHOLE MILK POWDER (rBST FREE), DRY RAOSTED ALMONDS, MILK FAT (rBST FREE), SEA SALT, SUNFLOWER LECHTIN, STEVIA EXTRACT, VANILLA EXTRACT.

[2] Everything You Need to Know About Stevia Sweeteners – Food Insight, https://foodinsight.org/everything-you-need-to-know-about-stevia-sweeteners/ (last accessed February 28, 2024).

[3] Victoria Peteliuk, Lesia Rybchuk, Maria Bayliak, Kenneth B. Storey, and Oleh Lushchak, Natural sweetener Stevia rebaudiana: Functionalities, health benefits and potential risks, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8600158/#:~:text=Many%20studies%20have%2 0shown%20that,.%2C%202017%5B19%5D) (last accessed February 28, 2024) (hereinafter, "Stevia Functionalities, health benefits and potential risks").

studies have shown that Stevia can be used to prevent or treat cancer, inhibits the activity of many pathogenic bacteria, can be used to treat immune diseases and reduce edema.[4] Stevia can also be used to treat diabetes because it "can suppress glucose levels, significantly increase glucose tolerance and stabilize blood sugar levels."[5] Stevia has also been shown to reverse high blood pressure, which is the most dangerous factor in the development of myocardial infarction and ischemic stroke.[6] Likewise, Stevia can be used to treat obesity and kidney disorders.[7] As such, Stevia is considered to be a more healthy, higher value sweetener.

18.    Stevia is also desired by consumers as an alternative to more harmful sweeteners, including sugar and artificial sweeteners that are known to contribute to health risks including tumors, cancer, heart disease, liver disease, high blood pressure, obesity, and diabetes.

19.    However, unbeknownst to consumers, the Products are not solely, or even predominantly, sweetened with Stevia. Instead, the Products are predominantly sweetened with erythritol.

20.    Erythritol is a sugar alcohol which is generally crafted from GMO cornstarch.[8] Ingestion of erythritol can lead to multiple side effects, including digestive problems, diarrhea, bloating, cramps, gas, nausea, and headaches.[9] Dieticians recognize the fact that erythritol is

---

[4] *Id.*

[5] Stevia Benefits | Natural Health Guide, https://www.indigo-herbs.co.uk/natural-health-guide/benefits/stevia (last accessed February 28, 2024).

[6] Stevia Functionalities, health benefits and potential risks.

[7] *Id.*

[8] Meritage Medical Network, *What Is Erythritol? Erythritol Side Effects And Danger*, https://meritagemed.com/erythritol/#:~:text=Erythritol%20side%20effects%20typically%20includ e,headaches%20may%20occur%20as%20well (last visited February 28, 2024).

[9] *Id.*

more disruptive to the consumer's gut than Stevia.[10] It also has been linked to an increased risk of heart attacks and stroke.[11]

21.      While the "Stevia Sweetened" representations in isolation deceive reasonable consumers into believing that the Products are solely or predominantly sweetened with Stevia, all of the Products also represent on their front labels that they have "No Sugar Added." The "No Sugar Added" representations only compound the deceptive nature of the Products' labeling. Consumers see the "No Sugar Added" representations and understand that they are purchasing a specialty chocolate product, where the Product is not sweetened with sugar, but a specific, alternative sweetener, Stevia. Consumers see only a single piece of information on the front of the Product packages as to the sweetener used as an alternative to sugar: Stevia. Thus, the "Stevia Sweetened" representations in the context of the "No Sugar Added" representations further serve to  mislead reasonable consumers to believe that the Products are solely or predominantly sweetened with Stevia. Moreover, the combination of Defendant's unambiguous representations make it far less likely that a consumer will turn the package over to read the fine print of the ingredient label. Otherwise stated, because the front label presents all the material information about the Products—i.e., the sweetener (Stevia), no sugar added, the flavor and percent cacao— Plaintiffs allege that very few consumers bother to turn the Product over and read the ingredient labels.

22.      Even if consumers had looked at the ingredient list, it would not have alerted consumers that the "Stevia Sweetened" claim was false because the ingredient list does not disclose that the ingredient erythritol is a sweetener. Reasonable consumers do not know what

---

[10] The Best And Worst Sweeteners, According to an RD, https://www.humnutrition.com/blog/best-and-worst-sweeteners/#:~:text=Dates%2C%20honey%20maple%20syrup%2C%20and,agave%2C%20and%20brown%20rice%20syrup (last accessed February 28, 2024).

[11] https://www.cnn.com/2023/02/27/health/zero-calorie-sweetener-heart-attack-stroke-wellness/index.html (last visited February 28, 2024).

erythritol is, how it is manufactured or even that it is a sweetener. Nor do reasonable consumers know of the health risks associated with consuming erythritol.

23.     Defendant knew or should have known that Plaintiffs and other consumers, in purchasing the Products, would rely on Defendant's false and misleading representations. Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers and gain an unfair advantage in the market. Defendant is well aware of consumers desire for natural sweeteners such as Stevia, which is why it chose to predominately label it with the only reference being to "Stevia." Knowing that erythritol is a less desired and cheaper sugar substitute, Defendant intentionally failed to disclose it on the front label of the Products.

24.     Consumers are willing to pay more for the Products based on the belief that the Products are solely, or at the very least primarily, sweetened with Stevia. Plaintiffs and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that the truth about them. Thus, through the use of misleading representations, Defendant commands a price that Plaintiffs and the Class would not have paid had they been fully informed.

25.     Therefore, Plaintiffs and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

26.     In making unlawful, false, misleading, and deceptive representations, Defendant distinguishes the Products from their competitors' products. Defendant knew and intended that consumers would purchase, and pay a premium for, products labeled with "Stevia Sweetened" claims. By using this branding and marketing strategy, Defendant is stating that the Products are superior to, better than, and more nutritious and healthful than other products that do not make "Stevia Sweetened" claims, or that properly disclose on the front of the product package that the product contains artificially sweeteners.

27.     Defendant intends and knows that consumers will and do rely upon front of the package food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the

front of product packaging, as Defendant has done with the claims on the Products that they are sweetened with Stevia. Most consumers do not check the ingredient list at the point of sale. This is consistent with the reports of Food Navigator, a food industry publication, which reported that "that there's actually much more consumer focus on front-of-pack claims than on the ingredient list" when it comes to matching consumer preferences, quoting the director of marketing for DuPont Nutrition & Health in North America.[12] Even if consumers did review the Products' ingredient list, reasonable consumers do not know what erythritol is, let alone know that it is an artificial sweetener.

28.    Because consumers pay a price premium for products that are sweetened with Stevia, and also pay a premium for products that contain no artificial sweeteners, by labeling its Products with "Stevia Sweetened" and/or omitting that the Products are actually sweetened by an artificial sweetener (erythritol), Defendant is able to both increase its sales and retain more profits.

29.    Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of the Products while decreasing the sales of competitors that do not misrepresent the ingredients used to sweetened their products and/or (ii) commanding a higher price for its Products because consumers will pay more for the Products sweetened with Stevia instead of artificial sweeteners.

30.    The market for Stevia sweetened products is continuing to grow and expand, and because Defendant knew consumers rely on representations about the ingredients used to sweeten food products, Defendant has an incentive to continue to make such unlawful and misleading representations. In addition, other trends suggest that Defendant has no incentive to change its labeling practices.

31.    For example, as one market analysis explained:

_____

[12] Elaine Watson, Who is driving the clean label agenda, and what does clean really mean?, Food Navigator, 9 March 2012, https://www.foodnavigator-usa.com/Article/2012/02/27/Who-is-driving-the-clean-label-agenda-and-what-does-clean-really-mean (last acced February 28, 2024).

The global Stevia market is experiencing growth, with increasing consumer preferences for sugar-free alternatives and a focus on healthier living. The rising demand for plant-based, organic sweeteners further boosts the market. Key players in the industry are expanding product offerings to meet the growing global demand, with a promising future for the Stevia market. [The] Stevia market size is estimated at USD 0.84 billion in 2024 and is expected to reach USD 1.36 billion by 2029, growing at a CAGR of 10.12% during the forecast period (2024-2029).[13]

32.     To capitalize on the growing market, Defendant continues to launch new product lines and flavors to diversify its portfolio to maintain its competitive edge. Moreover, Defendant has continued to replicate its misrepresentations on new products. It is therefore likely that Defendant will continue to unlawfully and/or misleadingly advertise the Products and perpetuate the misrepresentations regarding the sweeteners used in the Products.

**The Products' Labeling Violates Federal and State Regulations**

33.     Identical federal and California laws regulate the content of labels on packaged food. The requirements of the Act, and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.") The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, none of the California laws sought to be enforced here imposes different requirements on the labeling of packaged food for sale in the United States.

34.     The Act, 21 U.S.C. § 343(a), and the Sherman Law, Cal. Health & Saf. Code § 110660, provide that a food is misbranded if "its labeling is false or misleading in any particular."

35.     Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. Seq.*), including but not limited to:

---

[13] Steiva Market Analysis 2024, https://fhafnb.com/blog/stevia-market/#:~:text=Growing%20consumer%20interest%20in%20sugar,to%20lower%20blood%20sugar%20levels (last accessed February 28, 2024).

a.     Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

b.     Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

c.     Section 110765, which makes it unlawful for any person to misbrand any food; and

d.     Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

36.     Defendant's marketing, advertising, and sale of the Products also violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. Seq.*), including, but not limited to:

a.     Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

b.     Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

c.     Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

37.     A reasonable consumer would expect that the Products provide what Defendant identifies them to provide on the product labels and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA. For example, a reasonable consumer would expect that, when Defendant labels the Products as being "Stevia Sweetened," as Defendant claims on the Products, Stevia is the only, or at the very least primary, sweetener

in the Products, and that the Products are not primarily sweetened by an alternative artificial sweetener.

### PLAINTIFFS' EXPERIENCES

**Plaintiff Nicole Loza**

38.   On multiple occasions in the last three years, Plaintiff Loza purchased Lily's Peppermint Flavor White Chocolate Style Baking Chips from Outlet Market at Bayshore in San Francisco, California.

39.   Plaintiff Loza made each of her purchases after reading and relying on the truthfulness of Defendant's front labels that promised the Products were "Stevia Sweetened." She believed the truth of each representation, i.e., that the product would actually be sweetened solely, or at the very least predominantly, by Stevia as claimed on the front label. Plaintiff did not review the back of the Product packages prior to her purchases. Even if she had, Plaintiff was not aware that erythritol is an artificial sweetener. However, Plaintiff Loza later learned after purchasing the Products that the Products' primary sweetening ingredient is erythritol, a synthetic sweetener linked to adverse health effects. Had Plaintiff Loza known this, she would not have purchased the Products, or at a minimum, would have paid less for each Product.

40.   Plaintiff continues to desire to purchase chocolate products, including those marketed and sold by Defendant, and would like to purchase chocolate products that are sweetened with Stevia. If the Products were reformulated to be sweetened solely, or at the very least primarily, with Stevia as represented on the labels, or the labels were changed to provide non-misleading information, Plaintiff would likely purchase them again in the future. Plaintiff regularly visits stores where the Products and other chocolate products are sold. Because Plaintiff does not know the formula for Defendant's products, which can change over time, Plaintiff will be unable to rely on Defendant's labels when shopping for chocolate products in the future absent an injunction that prohibits Defendant from mislabeling the Products. In addition, at present Plaintiff cannot rely on the accuracy of Defendant's labels for the entire line of Products, which Plaintiff is also interested in purchasing with truthful labeling. Should Defendant begin to market and sell a new line of products, Plaintiff could also be at risk for buying another one of

Defendant's products in reliance on the same or similar misrepresentation and omissions. And because of Defendant's unlawful and misleading labels on its Products, Plaintiff cannot make informed choices between chocolate products offered by Defendant and chocolate products offered by other manufacturers, such as choices based on price and ingredient used to sweeten the chocolate.

**Plaintiff Kimberly Hall**

41. On multiple occasions in the last three years, Plaintiff Hall purchased Lily's Creamy Milk Chocolate and Lily's Salted Caramel Milk Chocolate from her local grocery store in Santa Rosa, CA.

42. Plaintiff Hall made each of her purchases after reading and relying on the truthfulness of Defendant's front labels that promised the Products were "Stevia Sweetened." She believed the truth of each representation, i.e., that the product would actually be sweetened solely, or at the very least predominantly, by Stevia as claimed on the front label. Plaintiff did not review the back of the Product packages prior to her purchases. Even if she had, Plaintiff was not aware that erythritol is an artificial sweetener. However, Plaintiff Hall later learned after purchasing the Products that the Products' primary sweetening ingredient is erythritol, a synthetic sweetener linked to adverse health effects. Had Plaintiff Hall known this, she would not have purchased the Products, or at a minimum, would have paid less for each Product.

43. Plaintiff continues to desire to purchase chocolate products, including those marketed and sold by Defendant, and would like to purchase chocolate products that are sweetened with Stevia. If the Products were reformulated to be sweetened solely, or at the very least primarily, with Stevia as represented on the labels, or the labels were changed to provide non-misleading information, Plaintiff would likely purchase them again in the future. Plaintiff regularly visits stores where the Products and other chocolate products are sold. Because Plaintiff does not know the formula for Defendant's products, which can change over time, Plaintiff will be unable to rely on Defendant's labels when shopping for chocolate products in the future absent an injunction that prohibits Defendant from mislabeling the Products. In addition, at present Plaintiff cannot rely on the accuracy of Defendant's labels for the entire line of Products, which

Plaintiff is also interested in purchasing with truthful labeling. Should Defendant begin to market and sell a new line of products, Plaintiff could also be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation and omissions. And because of Defendant's unlawful and misleading labels on its Products, Plaintiff cannot make informed choices between chocolate products offered by Defendant and chocolate products offered by other manufacturers, such as choices based on price and ingredient used to sweeten the chocolate.

**Plaintiff Nicole Rivera**

44.     On multiple occasions in the last three years, Plaintiff Rivera purchased Lily's Salted Caramel Milk Chocolate Style bar from Amazon.com.

45.     Plaintiff Rivera made each of her purchases after reading and relying on the truthfulness of Defendant's front labels that promised the Products were "Stevia Sweetened." She believed the truth of each representation, i.e., that the product would be sweetened solely, or at the very least predominantly, by Stevia as claimed on the front label. Plaintiff did not review the back of the Product packages prior to her purchases. Even if she had, Plaintiff was not aware that erythritol is an artificial sweetener. However, Plaintiff Rivera later learned after purchasing the Products that the Products' primary sweetening ingredient is erythritol, a synthetic sweetener linked to adverse health effects. Had Plaintiff Rivera known this, she would not have purchased the Products, or at a minimum, would have paid less for each Product.

46.     Plaintiff continues to desire to purchase chocolate products, including those marketed and sold by Defendant, and would like to purchase chocolate products that are sweetened with Stevia. If the Products were reformulated to be sweetened solely, or at the very least primarily, with Stevia as represented on the labels, or the labels were changed to provide non-misleading information, Plaintiff would likely purchase them again in the future. Plaintiff regularly visits stores where the Products and other chocolate products are sold. Because Plaintiff does not know the formula for Defendant's products, which can change over time, Plaintiff will be unable to rely on Defendant's labels when shopping for chocolate products in the future absent an injunction that prohibits Defendant from mislabeling the Products. In addition, at present

Plaintiff cannot rely on the accuracy of Defendant's labels for the entire line of Products, which Plaintiff is also interested in purchasing with truthful labeling. Should Defendant begin to market and sell a new line of products, Plaintiff could also be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation and omissions. And because of Defendant's unlawful and misleading labels on its Products, Plaintiff cannot make informed choices between chocolate products offered by Defendant and chocolate products offered by other manufacturers, such as choices based on price and ingredient used to sweeten the chocolate.

47.     Plaintiffs and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or misleading under state law and the products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

## CLASS ALLEGATIONS

48.     Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following group of similarly situated persons, defined as follows:

**The Class:** All persons in the United States who purchased the Products between March 8, 2020 and the present (the "Class Period").

**The Subclass:** All Class Members who purchased the Products in the State of California.

49.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

50.     Numerosity: Plaintiffs do not know the exact size the Class and Subclass, but they estimate that each is composed of more than 100 persons. The persons in the Class and Subclass

are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

51.    Common Questions Predominate: This action involves common questions of law and fact to the potential Class and Subclass because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products were "Stevia Sweetened" as represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class and Subclass to recover. The questions of law and fact common to the Class and Subclass are:

a.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are unlawful and/or misleading;

b.    Whether Defendant's actions violate the laws invoked herein;

c.    Whether labeling the Products with a "Stevia Sweetened" claim causes the Products to command a price premium in the market;

d.    Whether representations regarding the sweetener in the Products are material to a reasonable consumer;

e.    Whether Defendant's engaged in the behavior knowingly, recklessly, or negligently;

f.    The amount of profits and revenues Defendant earned as a result of the conduct;

g.    Whether Class and Subclass members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

h.    Whether Class and Subclass members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

52.    Typicality: Plaintiffs' claims are typical of the claims of the other members of the Class and Subclass because, among other things, all such claims arise out of the same wrongful

course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class and Subclass was caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

53.    Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all Class and Subclass members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of Class and Subclass members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class and Subclass. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all Class and Subclass members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and Subclass members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class and Subclass members.

54.    Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class and Subclass will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class and Subclass members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the Class and Subclass may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

55.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

Plaintiffs do not plead, and hereby disclaim, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiffs rely on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

**PLAINTIFFS' FIRST CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiffs and the Subclass**

56.     Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

57.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

58.     Plaintiffs and other Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

59.     The Products that Plaintiffs (and other similarly situated subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

60.     Defendant's acts, practices and omissions, set forth in this Class Action Complaint, led customers to falsely believe that the Products were sweetened exclusively, or at least primarily, by Stevia. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper

representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant deceptively markets and advertises that, unlike other chocolate product manufacturers, it sells Products that are exclusively, or at least primarily, sweetened by Stevia. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised.

61.    Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Subclass will continue to suffer harm. Plaintiffs and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

62.    On or about June 7, 2023, Defendant was provided with notice and a demand to correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, they failed to identify consumers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated Subclass members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

63.    Plaintiffs also requests that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf of Plaintiffs and the Subclass**

64.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

65.     Beginning at an exact date unknown to Plaintiffs, but within four (4) years preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

66.     Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that the Products that they were purchasing were sweetened using Stevia, and that the Products were not primarily sweetened by an artificial sweetener.

67.     Plaintiffs and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing Defendant's Products or paying less for them.

68.     Defendant's acts and omissions are likely to deceive the general public.

69.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase their profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

70.     The aforementioned practices, which Defendant used, and continues to use, to their significant financial gain, also constitutes unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

71.     As a direct and proximate result of such actions, Plaintiffs and the other members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a

result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

72.      Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated Subclass members by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiffs and the Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent Subclass members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Subclass may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

73.      Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

74.      Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in

fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they are not entitled. Plaintiffs, those similarly situated, and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFFS' THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiffs and the Class**

75.   Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

76.   Defendant has fraudulently and deceptively informed Plaintiffs that the Products were sweetened using Stevia. Defendant failed to disclose that the Products were primarily sweetened with an artificial sweetener.

77.   These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiffs, and material at the time they were made. Defendant knew or should have known the composition of the Products, and knew or should have known that the Products were not exclusively, or at least primarily, sweetened with Stevia as represented on the front label. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase Defendant's Products. In misleading Plaintiffs and not so informing them, Defendant breached their duty to them. Defendant also gained financially from, and as a result of, their breach.

78.   Plaintiffs and those similarly situated relied to their detriment on Defendant's misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

79.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intends to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Products.

80.    Plaintiffs and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

81.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

82.    Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiffs and those similarly situated.

## PLAINTIFFS' FOURTH CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiffs and the Subclass**

83.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

84.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this Complaint.

85.    In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110705, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in

21 U.S.C. § 343(a), et seq. and FDA regulations, which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

86.     In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, misleading reasonable consumers regarding the sweetener used in the Products.

87.     Plaintiffs and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

88.     Defendant's acts and omissions are likely to deceive the general public.

89.     Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

90.     The aforementioned practices, which Defendant has used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

91.     As a direct and proximate result of such actions, Plaintiffs and the other Subclass members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Subclass members lost the amount they paid for the Products.

92.     As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

93.     Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including the restitution for the premium and/or full price that they or others paid to

Defendant as a result of Defendant's conduct. Plaintiffs and the Subclass lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the California Sherman Law does not provide a direct cause of action, so Plaintiffs and the Subclass must allege those violations as predicate acts under the UCL to obtain relief.

94.    Plaintiffs also seek equitable relief, including restitution, with respect to their UCL "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiffs and the Subclass may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

95.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

96.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of

money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiffs and those similarly situated have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFFS' FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### On Behalf of Plaintiffs and the Class

97.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

98.    Plaintiffs and members of the Class conferred a benefit on Defendant by purchasing the Products.

99.    Defendant has been unjustly enriched in retaining the revenues from Plaintiffs' and Class members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products were sweetened exclusively, or at least primarily, with Stevia. Defendant did not disclose to consumers on the front of the Products' packages that they were actually sweetened with an artificial sweetener.

100.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

101.    Plaintiffs, therefore, seek an order requiring Defendant to make restitution to them and other members of the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A.     Certification of the proposed Class and Subclass, including appointment of Plaintiffs' counsel as class counsel;

B.     An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.     An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.     An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.     An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.     An award of treble damages, except for those causes of action where treble damages are not legally available;

G.     An award of restitution in an amount to be determined at trial;

H.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.     For reasonable attorneys' fees and the costs of suit incurred; and

J.     For such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated: March 8, 2024

**GUTRIDE SAFIER LLP**

*/s/Seth A. Safier/s/*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

# EXHIBIT A

I, Nicole Loza, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      As set forth in my complaint, I purchased multiple times within the past three years, Lily's Peppermint Flavor White Chocolate Style Baking Chips from Outlet market at Bayshore in San Francisco, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 28th day of February 2024, in South San Francisco, California.



_____
Nicole Loza

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

# EXHIBIT B

DocuSign Envelope ID: EBD8988B-D79B-4B71-9484-4E9503064AD3

I, Kimberly Hall, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      As set forth in my complaint, I purchased multiple times within the past three years, Lily's Creamy Milk Chocolate and Lily's Salted Caramel Milk Chocolate from Oliver's Market in Sonoma County, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 29th day of February 2024, in Santa Rosa, California.



_____
Kimberly Hall

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

# EXHIBIT C

**Exhibit C**

|   | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| **Lily's Chocolate Bars** | | | |
| 1. | Almond Dark Chocolate | 55% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |
| 2. | Birthday Cake White Chocolate Style | Less Sugar. Sweet Life<br><br>Stevia Sweetened<br><br>Sweet & Creamy<br><br>No Sugar Added |  |

|  | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 3. | Blood Orange Extra Dark Chocolate | 70% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |
| 4. | Coconut Dark Chocolate | 55% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 5. | Cookies & Crème White Chocolate Style | Stevia Sweetened<br><br>Sweet & Creamy<br><br>No Sugar Added |  |
| 6. | Creamy Milk Milk Chocolate Style | 40% Cocoa<br><br>Stevia Sweetened<br><br>Sweet & Creamy<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 7. | Crispy Rice Dark Chocolate | 55% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |
| 8. | Extra Dark Extra Dark Chocolate | 70% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 9. | Extremely Dark Chocolate | 85% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |
| 10. | Hazelnut Milk Chocolate Style | 40% Cocoa<br><br>Stevia Sweetened<br><br>Sweet & Creamy<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 11. | Intensely Dark Chocolate | 92% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |
| 12. | Mocha Hot Cocoa Extra Dark Chocolate | 70% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |

|     | Product Name                  | Front Label Claim(s) | Product Images |
|-----|-------------------------------|----------------------|----------------|
| 13. | Original Dark Chocolate       | 55% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |
| 14. | Original White Chocolate Style | Stevia Sweetened<br><br>Sweet & Creamy<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 15. | Peppermint White Chocolate Style | Stevia Sweetened<br><br>Sweet & Creamy<br><br>No Sugar Added | |
| 16. | Salted Almond Extra Dark Chocolate | 70% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added | |

|    | Product Name | Front Label Claim(s) | Product Images |
|----|--------------|----------------------|----------------|
| 17. | Salted Almond Milk Chocolate Style | 40% Cocoa<br><br>Stevia Sweetened<br><br>Sweet & Creamy<br><br>No Sugar Added |  |
| 18. | Salted Caramel Extra Dark Chocolate | 70% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 19. | Salted Caramel Milk Chocolate Style | 40% Cocoa<br><br>Stevia Sweetened<br><br>Sweet & Creamy<br><br>No Sugar Added |  |
| 20. | Sea Salt Extra Dark Chocolate | 70% Cocoa<br><br>Stevia Sweetened<br><br>Dark & Rich<br><br>No Sugar Added |  |
| **Lily's Baking Chips** | | | |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 21. | Butterscotch Flavor Baking Chips, White Chocolate Style – 7oz bag | Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 22. | Butterscotch Flavor Baking Chips, White Chocolate Style – 9oz bag | Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 23. | Chocolate Cinnamon Flavor Baking Chips 7oz | 32% Cocoa<br><br>Made with Stevia<br><br>No Sugar Added |  |

**Commented [RE1]:** Ok to keep this product?

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 24. | Chocolate Mint Flavor Baking Chips 7oz | 32% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 25. | Chocolate Salted Caramel Flavor Baking Chips 7oz | 32% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 26. | Chocolate Salted Caramel Flavor Baking Chips 9oz | Stevia Sweetened<br><br>32% Cocoa<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 27. | Dark Chocolate Baking Chips 7oz | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

|  | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 28. | Dark Chocolate Baking Chips 9oz | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

|   | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 29. | Milk Chocolate Style Baking Chips 7oz | 32% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 30. | Milk Chocolate Style Baking Chips 9oz | Stevia Sweetened<br><br>32% Cocoa<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 31. | Peppermint Flavor Baking Chips, White Chocolate Style 7oz | Stevia Sweetened<br><br>No Sugar Added | |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 32. | Peppermint Flavor Baking Chips, White Chocolate Style 9oz | Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 33. | Pumpkin Spice Flavor Baking Chips, White Chocolate Style 7oz | Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 34. | Pumpkin Spice Flavor Baking Chips, White Chocolate Style 9oz | Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 35. | Raspberry Flavor and White Chocolate Style Baking Chips | Stevia Sweetened<br><br>No Sugar Added |  |

|   | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 36. | Semi-Sweet Style Baking Chips 7oz | 45% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added | <br> |

|  | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 37. | Semi-Sweet Style Baking Chips 9oz | Stevia Sweetened<br><br>45% Cocoa<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 38. | Unicorn Swirl Baking Chips, White Chocolate Style 7oz | Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 39. | White Chocolate Style Baking Chips 7oz | Stevia Sweetened<br><br>No Sugar Added | <br> |

|  | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 40. | White Chocolate Style Baking Chips 9oz | Stevia Sweetened<br><br>No Sugar Added |  |
| **Lily's Baking Bars** | | | |
| 41. | Dark Chocolate Baking Bar | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 42. | Horizontal Dark Chocolate Baking Bar | 58% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |
| 43. | Semi-Sweet Style Baking Bar | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 44. | Horizontal Semi-Sweet Style Baking Bar | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |
| 45. | White Chocolate Style Baking Bar | Stevia Sweetened<br><br>No Sugar Added |  |

|  | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 46. | Horizontal White Chocolate Style Baking Bar | Stevia Sweetened<br><br>No Sugar Added |  |
| **Lily's Chocolate Popcorn** | | | |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 47. | Dark Chocolate Caramel Popcorn | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 48. | Milk Chocolate Style Caramel Popcorn | 40% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added | <br><br> |
| | **Lily's Chocolate Almonds** | | |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 49. | Dark Chocolate Style Covered Almonds | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

|   | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 50. | Milk Chocolate Style Covered Almonds | 40% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added | <br> |
| **Lily's Chocolate Caramels** | | | |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 51. | Dark Chocolate Style Covered Caramels | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 52. | Milk Chocolate Style Covered Caramels | 40% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added | <br> |
| **Lily's Chocolate Peanuts** | | | |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 53. | Milk Chocolate Style Covered Peanuts | 40% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |
| **Lily's Chocolate Peanut Butter Cups** | | | |

|     | Product Name | Front Label Claim(s) | Product Images |
| --- | --- | --- | --- |
| 54. | Dark Chocolate Style Peanut Butter Cups 1.25oz | Stevia Sweetened<br><br>70% Cocoa<br><br>No Sugar Added |  |

|    | Product Name | Front Label Claim(s) | Product Images |
|----|--------------|----------------------|----------------|
| 55. | Dark Chocolate Style Peanut Butter Cups 3.2oz | 70% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 56. | Milk Chocolate Style Peanut Butter Cups 1.25oz | Stevia Sweetened<br><br>40% Cocoa<br><br>No Sugar Added |  |

|  | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 57. | Milk Chocolate Style Peanut Butter Cups 3.2oz | 40% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added | <br><br> |
| **Lily's Tasting Squares** | | | |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 58. | Extra Dark Chocolate Style Tasting Squares | 70% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |
| 59. | Extra Dark Chocolate Style 2 Tasting Squares | 70% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 60. | Salted Caramel Milk Chocolate Style Tasting Squares | 40% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |
| 61. | Salted Caramel Milk Chocolate Style 2 Tasting Squares | 40% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |
| **Lily's Filled Chocolate Style Bars** | | | |

|   | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 62. | Creamy Caramel Filled Dark Chocolate | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |
| 63. | Hazelnut Butter Filled Dark Chocolate | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |

| | Product Name | Front Label Claim(s) | Product Images |
|---|---|---|---|
| 64. | Peanut Butter Filled Dark Chocolate | 55% Cocoa<br><br>Stevia Sweetened<br><br>No Sugar Added |  |